**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amber Nicole Murphy; and Travis Lee Murphy,<br><br>   Plaintiffs,<br><br>v.<br><br>Rachel Hayes,<br><br>   Defendant. | No. CV-23-00589-PHX-DGC<br><br>**ORDER** |

Pro se Plaintiffs Amber Nicole Murphy and Travis Lee Murphy filed a complaint against Defendant Rachel Hayes. Doc. 1. Defendant moves to dismiss the complaint for lack of standing and failure to state a claim. Doc. 7. Plaintiffs move for injunctive relief. Doc. 9. The motions are fully briefed and no party requests oral argument. For reasons set forth below, the Court will grant Defendant's motion to dismiss, grant leave to amend, and deny Plaintiffs' motion for injunctive relief.

**I.     Background.**

Plaintiffs' complaint contains the following allegations.

Plaintiffs Amber and Travis Murphy are spouses. Doc. 1 ¶¶ 1, 32. They lived in Wickenburg, Arizona with Mrs. Murphy's biological children: M.S. (a 15-year-old daughter), I.S. (a 12-year-old daughter), and R.G. (an 8-year-old son). *Id.* ¶¶ 19, 32.

On December 18, 2022, Plaintiffs discovered that the cell phone they provided to I.S. contained social media accounts created without their permission. *Id.* ¶¶ 11, 15.

Plaintiffs found an additional cell phone which also contained social media accounts belonging to I.S., obtained without their approval. *Id.* ¶¶ 11-15. Plaintiffs took the cell phones away. *Id.* ¶¶ 16-17. I.S. became angry and told Mrs. Murphy that "[y]our husband touched me, and I am going to put one of you in jail." *Id.* ¶ 17. I.S. said she wanted to be placed in foster care, intended to tell her teachers about the alleged abuse, and planned to run away. *Id.* ¶¶ 17-18.

Plaintiffs took I.S. to the Wickenburg Police Department. *Id.* ¶ 18. The complaint does not clearly state what happened during this visit, but Defendant's motion to dismiss suggests that Mr. Murphy was "booked" on a charge of child molestation. Doc. 7 at 3 n.4. The timing is not clear, but the complaint indicates that at some point Mr. Murphy moved out of the family home. *Id.* ¶¶ 19-20.

On December 23, 2022, Defendant Rachel Hayes, a social worker with the Arizona Department of Social Services, interviewed M.S. and R.G. at the Murphy home (*id.* ¶¶ 3, 19) and Mr. Murphy at a restaurant (*id.* ¶ 20). Defendant said "she didn't believe the allegations and that [Mr. Murphy] would be allowed to return home" by January 1, 2023. *Id.* ¶¶ 19, 25. Defendant also agreed to assist Mrs. Murphy with getting I.S. into therapy. *Id.* ¶ 21.

On March 1, 2023, I.S. withdrew the allegations of abuse in an interview with law enforcement. *Id.* ¶ 27. On March 8, Defendant prepared a safety action plan ("the Plan") that did not allow Mr. Murphy to move back into the family home. *Id.* ¶ 28. The Plan also erroneously stated that Mr. Murphy "was charged with a sex offense" even though criminal charges were never filed. *Id.* ¶ 26.

Although somewhat unclear, the harm allegedly caused by Defendant's actions appears to include the following: Defendant never provided the therapy assistance for I.S. that she promised (*id.* ¶¶ 21-22, 24), the Plan written by Defendant falsely stated that Mr. Murphy was "charged" with a crime (*id.* ¶ 26), the Plan required Mr. Murphy to move out of the family home for a period of months (*id.* ¶ 28), and Mr. Murphy's absence from the home has caused marital difficulties, financial stress, and trauma for the children (*id.* ¶ 32).

The complaint mentions other harms, but they do not appear to be attributable to Defendant. *See id.* ¶ 30 (I.S. has continued to have behavioral difficulties, including self-harm and institutionalization), ¶ 32 ("We had to move from our home in Wickenburg, AZ to find help for our daughter."), *id.* (Plaintiffs have paid for I.S.'s therapy out-of-pocket).

Plaintiffs sue Defendant under 42 U.S.C. § 1983 for violation of their First, Fifth, and Fourteenth Amendment rights to familial association. *Id.* ¶¶ 3, 9, 45-54.

## II.     Plaintiff Travis Murphy's Standing.

The Constitution protects parental rights to familial association. *See, e.g., Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (recognizing "claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association"). State actors may not interfere with these rights without "fundamentally fair procedures." *Keates*, 883 F.3d at 1236.

Defendant argues that Mr. Murphy lacks standing to claim loss of familial association because he "is not a blood relative or a prospective adoptive parent to any of the three children." Doc. 7 at 5-6. But "biological relationships are not the exclusive determination of the existence of a family." *Smith v. Org. of Foster Fams. For Equal. & Reform*, 431 U.S. 816, 843 (1977). A familial relationship "stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children . . . as well as from the fact of blood relationship." *Id.* at 844.

Defendant relies on *Piper v. Cabillo*, 670 F. App'x 507 (9th Cir. 2016), but the Court does not find it helpful. *Piper* considered whether a teenager's great aunt and legal guardian had standing to sue for loss of a familial relationship with the teenager when the biological parents of the teenager had already recovered for the same loss of relationship. *Id.* The Court stated:

> Piper asserts that she raised D.L. when his biological parents would not take responsibility for him, but the constitutionally protected liberty interest of parents in relationships with their children is not obviated by the weakness of the relationship. Nor can Piper allege facts (such as an adoption)

- 3 -

establishing that she legally supplanted the parents' familial interests. *Although we today assume without deciding that a non-biological non-adoptive "parent" could, under some circumstances, recover under § 1983 for loss of familial relations with a child*, we cannot find such standing in a case in which the biological parents have already vindicated identical rights against the same defendant.

*Id.* at 508 (citations omitted) (emphasis added).

*Piper* did not reject the possibility of a "non-biological non-adoptive parent" — it assumed without deciding that such a relationship could exist. *Piper* does not stand for the proposition that Mr. Murphy cannot assert a claim under § 1983.

Mr. Murphy is married to the children's mother and they have lived together as a family unit. Doc. 1 ¶¶ 19, 31. He provides parental care, such as making discipline-related decisions, providing financial support, and supplying health insurance. *Id.* ¶¶ 16-17; Doc. 8 at 3. Each child has an emotional connection to Mr. Murphy and "[t]he only family that [Mrs. Murphy and the children] have is [Mr. Murphy's] family." Doc. 1 ¶ 32. He is functionally the children's step-father.

Courts in this circuit have recognized that step-parents and step-grandparents have standing to assert claims for loss of familial association. *See, e.g.*, *Sanchez v. Cnty. of Santa Clara*, No. 5:18-CV-01871-EJD, 2018 WL 3956427, at *9 (N.D. Cal. Aug. 17, 2018) ("[T]he Court finds that it cannot foreclose the possibility that [the paternal grandmother and paternal step-grandfather of minors JB and AB] have adequately alleged a cognizable liberty interest in familial integrity and association."); *Ramirez v. City of Oxnard*, No. 2:12-CV-09697-SVW-FFM, 2013 WL 12129396, at *7 (C.D. Cal. July 23, 2013) ("[T]he Court concludes that Eileen has established a protected liberty interest in her familial relationship with Decedent. It is undisputed that she married Decedent's biological father and raised Decedent as her son since he was four and a half years old until his death when he was eighteen."); *see also Osborne v. Cnty. of Riverside*, 385 F. Supp. 2d 1048, 1054-55 (C.D. Cal. 2005) ("[C]lose relatives who have a long-standing custodial relationship with related children such that together they constitute an existing family unit possess a liberty interest

in familial integrity and association.") (cleaned up).  The Court finds these cases persuasive and will not dismiss Mr. Murphy's claim for lack of standing.

### III. Defendant's Motion to Dismiss.

#### A. Legal Standard.

A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint's factual allegations are taken as true and construed in the light most favorable to the plaintiff.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  A complaint may be dismissed "based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

#### B. First and Fourteenth Amendment Claims.

The First and Fourteenth Amendments protect against "unwarranted interference with the right to familial association[.]"  *Keates*, 883 F.3d at 1236; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987)) ("[T]he First Amendment protects . . . family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'"); *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) ("[T]he Fourteenth Amendment[] guarantee[s] that parents and children will not be separated by the state without due process of law except in an emergency.").

To establish a familial association claim under the First or Fourteenth Amendment, "a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property."  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1060 (9th Cir. 2019) (citation omitted); *see also Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017) ("First

Amendment rights to familial association are measured by the same standard as Fourteenth Amendment rights[.]"). "Official conduct that shocks the conscience in depriving parents of a relationship with their children is cognizable as a [constitutional] violation." *Capp*, 940 F.3d at 1060 (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

### 1. Defendant's Allegedly False Statement.

Plaintiffs allege that the Plan incorrectly and deliberately states Mr. Murphy was charged with a sex crime. Doc. 1 ¶ 26. Plaintiffs further assert that the Plan was provided to a state juvenile court (a fact Defendant disputes), but they do not identify any adverse action that resulted from the allegedly false statement. *Id.*; *see also* Doc. 7 at 10.

The Ninth Circuit has held that false statements made in connection with an investigation of child abuse, without more, do not rise to the level of a constitutional violation. *See Dees v. County of San Diego*, 960 F.3d 1145, 1150-53 (9th Cir. 2020) (letter to court falsely stating that children were to be removed from parent's home, that had no other effect, did not violate Fourteenth Amendment); *Capp*, 940 F.3d at 1159-60 (falsely stating that father had been placed on child abuse monitoring list, without more, did not violate Fourteenth Amendment); *see also Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (citations omitted) ("A careless or inaccurate investigation that does not ensure an error-free result does not rise to the level of a constitutional violation.").[1]

### 2. Failure to Provide Counseling Resources for I.S.

Plaintiffs provide no authority for the proposition that Defendant's failure to provide them with counseling resources for I.S. violated their constitutional rights. Nor do they explain how this alleged conduct deprived them of life, liberty, or property. *Capp*, 940 F.3d at 1060.

/ / /

---

[1] Plaintiffs' allegations do not rise to the level of judicial deception. To make such a claim, a plaintiff must show that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017); *see also Keates*, 883 F.3d at 1240-41. Plaintiffs do not allege that the claimed false statement in the Plan was ever submitted as evidence in a court proceeding or caused either Plaintiff to be deprived of liberty.

**3.     The Plan's Alleged Removal of Mr. Murphy From the Home.**

Plaintiffs have not alleged sufficient facts to state a constitutional claim based on the alleged exclusion of Mr. Murphy from the family home.

Defendant argues that the Plan was entered voluntarily by Mrs. Murphy, and that such a voluntary agreement does not give rise to a constitutional violation.  Doc. 7 at 9. But the voluntary nature of the Plan is not alleged in Plaintiffs' complaint and the Court cannot accept Defendant's factual assertions as true in ruling on a motion to dismiss. Defendant cites an unidentified source for the proposition that the Plan was voluntary. *Id.* If the intent is to cite a state manual mentioned in a separate footnote (*id.* at 7 n.8), Defendant provides no basis for the Court to conclude that the manual accurately reflects what happened in this case.  Plaintiffs argue in their reply that their consent to the Plan was secured by duress — another factual assertion the Court cannot consider on this motion to dismiss.

Plaintiffs' complaint is not much more illuminating.  It suggests that Mr. Murphy left the home before January 1, 2023 (Doc. 1 ¶ 19), which could not have been pursuant to the Plan, which was issued on March 8, 2023 (*id.* ¶ 26).  Plaintiffs do not explain why he left the home or whether Defendant had anything to do with his departure.  Nor do they explain how the Plan, which is described by Plaintiffs as "paperwork" (*id.*), exerted any legal requirement for Mr. Murphy to stay away from the home.  Plaintiffs do not allege that any court or law enforcement authority compelled his departure or continuing separation.

As a result, even if Mr. Murphy's absence from the home could constitute a violation of his First or Fourteenth Amendment rights — a question neither side addresses with relevant case law — Plaintiffs allege no facts from which the Court can conclude that Defendant procured or compelled his absence.  As a result, Plaintiffs have failed to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (cleaned up).

/ / /

/ / /

### 4. First and Fourteenth Amendment Conclusion.

Plaintiffs fail to allege a viable legal theory for deprivation of their First or Fourteenth Amendment rights based on the allegedly false statement in the Plan or the failure to provide counseling resources for I.S. And they fail to provide sufficient factual allegations to state a claim based on Mr. Murphy's absence from the home. Their remaining injuries, as noted above, are not attributable to Defendant's actions. The Court will grant the motion to dismiss Plaintiff's First and Fourteenth Amendment claims for failure to state a claim.

### C. Fifth Amendment Claims.

The Fifth Amendment "protects [a plaintiff] against only federal governmental action." *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir. 1986). Defendant is not a federal official and her actions were not federal actions. Plaintiffs accordingly fail to state a claim under the Fifth Amendment. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (affirming dismissal of a Fifth Amendment claim against a local official as "plainly foreclosed by the Constitution").

## IV. Leave to Amend and Plaintiffs' Obligations.

"A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988). Because the Court cannot conclude that Plaintiffs' complaint is incapable of cure by amendment, leave to amend will be granted. Plaintiffs shall have until **August 11, 2023** to file an amended complaint.

Plaintiffs are advised to become familiar with and follow the Federal Rules of Civil Procedure and the Rules of the United States District Court for the District of Arizona ("Local Rules"), which may be obtained in the Clerk of Court's office.[2] For purposes of

---

[2] The rules also are available on this District Court's website, along with a Handbook for Self-Represented Litigants that may help Plaintiffs understand the litigation process. *See* U.S. District Court, District of Arizona, *Information for those Proceeding Without an Attorney (Pro Se)*, https://www.azd.uscourts.gov/proceeding-without-attorney (last visited July 11, 2023).

an amended complaint, Plaintiffs are directed to Rules 8 and 10 of the Federal Rules of Civil Procedure.

Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction . . .(2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). Rule 8(d) provides that each allegation "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 10(b) requires the plaintiff to state claims in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And where doing so would promote clarity, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*; *see also Iqbal*, 556 U.S. at 677 (explaining that the "short and plain statement of the claim" required by Rule 8(a)(2) must designate the legal cause of action and include relevant factual allegations to render the claim plausible).

If Plaintiffs fail to prosecute this action or to comply with the rules or any Court order, the Court may dismiss the action with prejudice pursuant to Federal Rule of Civil Procedure 41(b). *See Ferdik v. Bonzelet*, 963 F.2d 1260-61 (9th Cir. 1992) (holding that the district court did not abuse its discretion in dismissing a pro se plaintiff's complaint for failing to comply with a court order).

**V.    Plaintiffs' Motion for Injunctive Relief.**

Because Plaintiffs have not stated a claim for relief, they are not entitled to injunctive relief.

**IT IS ORDERED:**

1.    Defendant's motion to dismiss (Doc. 7) is **granted** and the Complaint (Doc. 1) is **dismissed** for failure to state a claim.

2.    Plaintiffs' motion for injunctive relief (Doc. 9) is **denied**.

3.    Plaintiffs are granted leave to amend their complaint. Plaintiffs shall have until **August 11, 2023** to file a first amended complaint, in compliance with this Order.

4.      If Plaintiffs fail to file a first amended complaint by **August 11, 2023**, the Clerk of Court must, without further order of the Court, enter a judgment of dismissal of this action with prejudice and deny any pending unrelated motions as moot.

Dated this 12th day of July, 2023.

_David G. Campbell_
David G. Campbell
Senior United States District Judge